The document below is hereby signed.

Signed: February 10, 2011.



```
_____
S. Martin Teel, Jr.
United States Bankruptcy Judge
```

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| MARTHA A. AKERS, | ) | Case No. 07-00662 |
| | ) | (Chapter 13) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| MARTHA A. AKERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 10-10006 |
| WINDWARD CAPITAL | ) | |
| CORPORATION, *et al.*, | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter** |
| Defendants. | ) | |

MEMORANDUM DECISION AND ORDER RE
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

The debtor commenced this adversary proceeding by the filing of a complaint against Windward Capital Corporation, the debtor's mortgage lender, and Mooring Financial Corporation, the servicer of the loan, for breach of contract. The debtor's property was damaged by a fire that started in a neighbor's adjoining property. In her complaint (including the amended complaint

which merely added claims against another party),[1] the debtor contends that the Windward and Mooring failed to take proper steps to recover a claim for the fire damage under a force-placed hazard insurance policy taken out by the lender pursuant to the terms of the deed of trust.  The court viewed the initial motion for summary judgment filed by Windward and Mooring as inadequately addressing the issues, but permitted them to file a supplemental motion.  For the reasons that follow, I will grant their supplemental motion for summary judgment, and dismiss this adversary proceeding as to them.[2]  The debtor also claims that Windward and Mooring failed to properly notice up a foreclosure sale of the property, but that was not pled by her in the initial or amended complaint, and ought not delay resolution of the claims that *were* pled, the monetary claims asserted by the debtor regarding the insurance claim.

---

[1] The initial complaint was erroneously titled an amended complaint, but I will refer to it as the complaint.  The amended complaint, filed on April 30, 2010, only named Capitol Insurance as a defendant and did not amend the allegations directed to Windward and Mooring.  To avoid any ambiguity, however, I will address whether summary judgment is appropriate as to both the initial complaint and the amended complaint.

[2] The debtor amended her complaint to add Capitol Insurance, the neighbor's insurance company, as an additional defendant, but there is no indication that the summons to Capitol Insurance was ever executed.  The court is issuing an order to show cause why the adversary proceeding ought not be dismissed, without prejudice, as to Capitol Insurance pursuant to Rule 4(m) of the Federal Rules of Civil Procedure (made applicable by Fed. R. Bankr. P. 7004(a)(1)).

I

The following facts are not in genuine dispute.

Akers was the owner of a parcel of real property located in the District of Columbia and commonly known as 1368 H Street, NE, Washington, D.C. 20002 (the "Property"). On or about July 26, 2000, Akers executed a promissory note in the loan amount of $63,7500.00 with Windward Capital Corporation (the "Lender"). Mooring Financial Corporation services the loan for the Lender. To secure payment of the Promissory Note, Akers granted the Lender a deed of trust against the Property. The defendants contend that, at the time of the filing of the petition, Akers was in default under the terms of the Note in the aggregate amount of $1,600.06. Akers disputes that she was in default.

The deed of trust provided that the borrower was required to maintain insurance on the property, and failing to do so, the Lender had the option to obtain such insurance and charge the cost of premiums to the borrower. Specifically, the deed of trust provided as follows with respect to property damage insurance:

> Maintenance of Insurance. Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of the Lender. . . .
>
> Expenditures by Lender: If Grantor fails to comply with any provision of this Deed of Trust . . . Lender on

3

>    Grantor's behalf may, but shall not be required to, take action that Lender deems appropriate.  Any amount that Lender expends in so doing will bear interest at the rate provided in the Note from the date incurred or paid by Lender to the date of repayment of the Grantor. . . .
>
>    Application of Proceeds.  Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $5,000.00.  Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty.  Whether or not Lender's security is impaired, Lender may, at its election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property.  If Lender elects to apply the proceeds to restoration and repair, grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender.  Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust.  Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the indebtedness.  If Lender holds any proceeds after payment in full of the indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

Believing that Akers had failed to obtain property damage insurance in accordance with the deed of trust, on or about July 22, 2008, Mooring purchased a fire insurance policy through Proctor Financial Insurance.[3]  On April 28, 2009, Windward and Mooring were informed that a fire at an adjacent building had

---

[3] The defendants contend that Akers failed to obtain the requisite insurance, while Akers contends that she provided proof of insurance coverage, as required.

caused damage to the Property. On May 13, 2009, Mooring filed an insurance claim under the Proctor policy, and Windward and Mooring received an insurance claim response from the United States Liability Insurance Group, which estimated the cost of repair to be $1,842.66, on July 15, 2009. This amount was less than the force-placed insurance policy's $2,500 deductible. The defendants offered to pay the $1,842.66 to Akers.[4]

Akers contends, and for purposes of disposing of this motion the court will accept as true, that she notified Liz Schalow, a representative of Windward, by phone that the $1,842.66 estimated cost of repair was incomplete and flawed. Ms. Schalow acknowledged the error and indicated that she would notify the insurance carrier.[5] The agent never came to the Property and United States Liability Insurance Group never adjusted their estimated cost of repair. Proctor never paid any amounts to the defendants or Akers in settlement of the claim.

---

[4] The defendants contend that the loan was in default and they had no legal obligation to make this offer, but rather, that it was simply an accommodation.

[5] Akers' contention is supported by Exhibit A to her December 16, 2010 Opposition to Summary Judgment (Dkt. No. 107), which is a letter from Liz Schalow directed to Ms. Akers reflecting that Akers had informed Mooring that the damage was more significant than the estimate provided by United States Liability Insurance Group, and notified her of her Mooring's decision to hire an independent claims adjuster to examine the damage to the property.

II

Akers contends that the force-placed insurance obtained by Mooring in accordance with the deed of trust was obtained for her benefit, and that Windward and Mooring had an obligation to mitigate Akers' losses by more zealously pursuing the true value of the insurance claim for her benefit.  Windward and Mooring, in turn, argue that the insurance was obtained for their benefit and their benefit alone, and that they owed no duties to Akers with respect to the force-placed insurance under which Akers was not a named insured.  Although the court concludes that the policy was obtained for the mutual benefit of the lender and Akers, and that the Windward and Mooring did take on certain duties when they exercised their option to insure the property, the court also concludes that they did not breach those limited duties, and that the fact that the insurance was taken out for the mutual benefit of the parties does not entitle Akers to pursue policy-related damages from Windward and Mooring.  The court further concludes that Windward and Mooring had no affirmative duty to pursue and maximize recovery of the claim under the force-placed insurance policy on Akers' behalf.  Rather, if Akers was not satisfied with their handling of the claim, her remedy, to the extent one exists, was limited to an independent right to seek recovery, as a possible third-party beneficiary of the policy, against Proctor.

A

# THE FORCE-PLACED INSURANCE WAS
# PROCURED FOR THE MUTUAL BENEFIT OF MOORING AND AKERS

Although not a named insured under the insurance policy, the language in the Deed of Trust authorizing the Lender to obtain force-placed insurance on the property makes clear that any such policy would be obtained for the mutual benefit of the Lender and Akers. The deed of trust provides as follows:

> Maintenance of Insurance: Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender . . . .

The deed of trust further provides:

> Expenditures by Lender: If Grantor fails to comply with any provision of this Deed of Trust . . . Lender on Grantor's behalf may, but shall not be required to, take action that Lender deems appropriate. Any amount that Lender expends in so doing will bear interest at the rate provided in the Note from the date incurred or paid by Lender to the date of repayment of the Grantor. . . .

It further provides:

> Application of Proceeds. Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $5,000. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at its election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair,

> Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender.  Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust.  Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the indebtedness. If Lender holds any proceeds after payment in full of the indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

The only fair reading of the above-quoted policy provisions is that any insurance obtained under the terms of the deed of trust was intended for the mutual benefit of the Lender and Akers.  The deed of trust specifically provides that the Lender's authorization to obtain insurance on the property is such that the action is to be taken *on the borrower's behalf*.  Likewise, the provision addressing the application of insurance proceeds does not distinguish between proceeds recovered under a policy obtained by the borrower and those obtained under a policy obtained by the Lender on the borrower's behalf.  In either case, the proceeds may help protect the Lender's security, and are to be applied in a fashion that either reduces the borrower's obligation under the note or improves or repairs the property. See *Warrener v. Federal Land Bank*, 266 Ky. 668, 99 S.W.2d 817, 820 (1936) (mortgagor has "vital interest" in the mortgagee's undertaking to procure insurance and it was for the parties'

mutual benefit).

B

WHEN MOORING EXERCISED ITS RIGHT UNDER THE DEED
OF TRUST TO OBTAIN INSURANCE, VERY LIMITED DUTIES AROSE
IN FAVOR OF AKERS AND THOSE DUTIES HAVE NOT BEEN BREACHED

The deed of trust did not obligate the defendants to insure Akers' property. However, "even when the mortgagee is not under a duty to effect insurance, but merely has the option to do so, an election to exercise such option obligates it to look after the interests of the mortgagor as well as its own." Couch § 65:7, citing *Warrener v. Federal Land Bank*, 266 Ky. 668, 99 S.W.2d 817 (1936) (finding a cause of action for either negligence or malfeasance when mortgagor advised mortgagee that it was taking out insurance policy in accordance with its right (not obligation) to do so, mortgagor relied upon that representation, and following fire damage to the lender's collateral it came to light that mortgagee had failed to procure insurance as indicated). The case law supporting this proposition makes clear that the limited duty that arises is the duty to insure that the policy sought to be obtained is then validly placed. The record reflects that Windward and Mooring met that duty by successfully obtaining and maintaining the force-placed insurance policy at issue in this dispute. Akers has not identified any other legal duties that arose in her favor incidental to the defendants' having obtained force-placed

insurance, and as such, the court concludes that Akers has likewise failed to demonstrate how the defendants' handling of the claim arising under the policy constituted a breach of duty arising under the deed of trust.

Akers has alleged only a breach of the deed of trust, not an obligation arising under the insurance policy. Theoretically, had the insurance policy expressly provided a mechanism for resolving disputes over the value of a claim that might arise between the Lender, insurer, and borrower, and had the Lender then settled the insurance claim without following those procedures, Akers might have grounds to complain about the Lender's handling of the insurance claim. *See In re Williams*, 360 B.R. 99 (Bankr. W.D. Pa. 2007) (insurance policy provided a mechanism for resolving a dispute between the insurer, the lender, and the borrower as to the amount of the loss, and the lender was found liable to the borrower when, in contravention of that procedure, it accepted an amount in settlement of the insurance claim without consulting with the borrower about the amount of the loss).

Here, none of the parties have offered the insurance policy into evidence, making it impossible to scrutinize the particulars of that contract. Moreover, *Williams*, the case cited to above and a case in which the mortgagee was found liable to the mortgagor for having accepted a check in settlement of an

insurance claim in an amount insufficient to cover the loss, is distinguishable on its facts.  In that case, the mortgagee affirmatively settled the insurance claim without consulting with the borrower, thereby cutting off any further rights to collect under the policy.  Here, by contrast, Akers' claim is that the Lender failed to pursue the claim after receiving a damage calculation that fell below the policy's deductible.  Nothing in the record suggests that the Lender's failure to contest the insurer's cost estimate, which estimate led the insurer to conclude that no amounts would be paid, terminated any independent rights Akers might have to enforce the policy.

In short, Akers has not shown that the Lender had any duty to instruct her on how independently to pursue recovery under the policy, and she has likewise not shown how the Lender's actions prevented her from pursuing recovery under the policy.  *See Barbel v. Chase Manhattan Bank*, 191 Fed. Appx. 101 (3d Cir. 2006) (mortgagor does not have a duty to advise a borrower on how to deal with an insurance company).

C

AKERS IS A THIRD-PARTY BENEFICIARY
OF THE INSURANCE POLICY, BUT THAT DOES NOT ENTITLE HER
TO RECOVER FROM DEFENDANTS FOR BREACH OF THE DEED OF TRUST

Contrary to the position adopted by Windward and Mooring, the court concludes that, on this record, Akers is a third-party beneficiary of the insurance policy between Mooring and Proctor.

"Applying the principle that a person may enforce a contract made by others for his or her benefit, a mortgagor may bring an action upon a policy of fire insurance taken out by the mortgagee to protect the mortgagor."  17 Couch on Ins. § 242:65, citing *American Sur. Co. Of New York v. Martinez*, 72 S.W. 2d 109 (Tex. Civ. App. El Paso 1934) (policy was obtained by lender without property owner's knowledge, consent, or authority, but the owner's suing on the policy is a manifestation of the owner's acceptance and ratification of the contract), and *Palma v. Verex Assur., Inc.*, 79 F.3d 1453 (5th Cir. 1996) (under Texas law, mortgagor was found to be a third-party beneficiary of mortgagee's insurance contract in part because of mortgagor had a contract with the named insured, paid the insurance premiums, and was designated by name in the certificate of insurance issued by the insurer).  *But see Mergenthal v. Star Banc Corp.*, 701 N.E.2d 383, 385 (Ohio App. 12 Dist. 1997) (mortgagor was only incidental beneficiary to mortgagee's force-placed insurance policy, and thus lacked standing to challenge the terms of the insurance settlement agreement).

"Under District of Columbia law, insurance contracts are governed by the substantive law of the state in which the policy is delivered."  *Sidibe v. Traveler's Ins. Co.*, 468 F. Supp. 2d 97, 100 (D.D.C. 2006).  Assuming that the force-placed insurance policy at issue in this proceeding was delivered in the District

12

of Columbia, then District of Columbia law would apply.  In the District of Columbia, "[o]ne who is not a party to a contract nonetheless may sue to enforce its provisions if the contracting parties intend the third party to benefit directly thereunder." *Western U. Telegraph Co. v. Massman Constr. Co.*, 402 A.2d 1275, 1277 (D.C. 1979).  The court "will read the contract as a whole to determine whether the third party's benefit under the contract is intended or incidental . . . . [, and] the absence of the third party's name from the contract is not fatal to his claim, especially when the surrounding circumstances tend to identify the third-party beneficiary."  *Id.*  Nevertheless, "the parties to a contract must directly and unequivocally intend to benefit a third-party to be considered an intended beneficiary . . . , [and t]he parties' mere knowledge or awareness that a contract may benefit a third-party is insufficient, without more, to demonstrate an intent to confer a benefit on the third party." *Bowhead Information Tech v. Catapult Tech.*, 377 F. Supp. 2d 166, 171 (D.D.C. 2005) (finding that successor contractor was not an intended third-party beneficiary of a continuity of services agreement between the Department of Transportation and the original contractor, which agreement required the original contractor to, *inter alia*, allow as many personnel as practicable to remain on the job to help the successor contractor maintain the continuity and consistency of services provided to the

Department of Transportation); *see also Sidibe v. Traveler's Ins. Co.*, 468 F. Supp. 2d 97, 100 (D.D.C. 2006) (nothing in the record to reflect that either party to the insurance contract intended plaintiff or any person similarly situated to the plaintiff to be a beneficiary of the policy).

Although the deed of trust contemplated that any insurance policy taken out by the mortgagee would be for the mutual benefit of the borrower and the lender, the parties have failed to submit any relevant excerpts from the insurance policy reflecting whether the insurer intended Akers to be a beneficiary of the policy.  In light of the unambiguous language in the deed of trust establishing that a force-placed insurance policy would be for the mutual benefit of the mortgagor and mortgagee, and because the policy necessarily insured property of the debtor, the only reasonable inference on this record is that Akers was a third-party beneficiary to the insurance policy.  See *Jones v. General Ins. Co. of America*, 2009 U.S. Dist. LEXIS 45014 *42 (S.D. Ala. May 29, 2009), citing *Palma v. Verex Assur., Inc.*, 79 F.3d 1453 (5th Cir. 1996), *Schlehuber v. Norfolk & Dedham Mut. Fire Ins. Co.*, 281 So. 2d 373 (Fla. App. 3 Dist. 1973), and *Wunschel v. Transcontinental Ins. Co.*, 17 Kan. App. 2d 457, 839

P.2d 64, 70 (Kan. App. 1992).[6]

Even treating Akers as a third-party beneficiary of the insurance contract, however, that would not entitle her to recover damages from Windward and Mooring. Mooring, as the named insured, has no obligation under the insurance policy to pay a claim. Likewise, neither Windward nor Mooring is alleged to have accepted amounts from Proctor in settlement of the claim as to which Akers could claim an entitlement under the terms of the deed of trust or otherwise. Instead, if Akers were found to be a third-party beneficiary of the insurance contract, that would simply provide a legal avenue for her directly to enforce the policy against Proctor notwithstanding that she is not a named insured.

### III

### NOTICE OF THE FORECLOSURE SALE

In her opposition to the supplemental motion for summary judgment, the debtor argues:

> Notices of Sale. - Lender shall give Grantor written certified notice, return receipt of any sale of real

---

[6] Alternatively, there is case law to support the proposition that Akers can achieve standing to seek relief against the insurer by naming the mortgagee in the complaint as a necessary party. *See N.Y. Underwriters Ins. Co. v. Jarvis*, 120 S.W.2d 8, 9 (Ark. 1938) *see also, Schlehuber v. Norfolk & Dedham Mutual Fire Ins. Co.*, 281 So. 2d 373, 375 (Fla. App. 1973) (relying in part on Florida statute, court concluded that mortgagee payment clause was a promise that could be enforced by property owner as third-party beneficiary even though he possessed no policy in his name).

>    property at least 30 days in advance of the intended date
>    of the sale. The notice was note [sic] sent to Grantor's
>    address of record 1319 Fairmont St NW, Washington, DC,
>    2009 by certified mail, return receipt or at all,
>    pursuant to Deed of Trust[.] Plaintiff pick up the postal
>    notice at 1368 H St, NE, Washington, DC, just days before
>    the date listed in the notice and retrieved the letter
>    from the main post office (See Heather James Affidavit
>    which does not affirm proper notice to the address of
>    record for notice of sale, there is no return postal
>    document submitted as proof of receiving date.)

The complaint and the amended complaint did not raise this claim. Indeed, this claim is based on events arising after the filing of the amended complaint, and, accordingly, could only be asserted via a supplemental complaint. Fed. R. Civ. Proc. 15(d). No motion was filed under Rule 15(d) to file a supplemental complaint. Accordingly, this is not a valid defense to the supplemental motion for summary judgment seeking dismissal of the complaint and amended complaint. The debtor remains free to pursue, outside of this adversary proceeding, the issue of whether the foreclosure sale was void for lack of proper notice.

The issue of the validity of the foreclosure sale was raised by the debtor by way of a motion to void the foreclosure sale. The Heather James Affidavit to which the debtor refers is Exhibit F to the opposition (Dkt. No. 66) to the debtor's motion to void the foreclosure sale. That motion to void the foreclosure sale was filed by the debtor without obtaining leave to file a supplemental complaint. Unfortunately, Windward and Mooring responded to the motion without insisting that the claim that the

16

sale was void must be pursued by a supplemental complaint, and was not properly before the court. In denying the motion, the court similarly overlooked the lack of any supplemental complaint raising that claim, treated the motion as a request for a preliminary injunction, and reasoned as follows:

> The plaintiff has offered no evidence in support of her motion, and instead offers only conclusory assertions of wrong unsupported by a recitation of specific facts establishing a wrong.
> . . .
> The debtor's reply, like the motion, offers no specific facts or evidence in support of the debtor's requested relief, and it likewise fails to rebut or even respond to the evidence offered by the defendants in support of their opposition. Accordingly, the court finds that the debtor has failed to establish a likelihood of prevailing on the merits such that she would be entitled to a preliminary injunction. The court likewise finds that the debtor has failed adequately to raise any issue that would warrant a hearing.

The debtor has attempted unsuccessfully in numerous ways to prevent the foreclosure sale from being held and to set aside the foreclosure sale, but when the debtor pursued her motion to void the foreclosure sale, this contention that the foreclosure notice was not sent to her by certified mail was not clearly identified as a ground for setting aside the foreclosure sale.[7] In any

---

[7] The Heather James Affidavit established that she sent a notice of the foreclosure sale to the debtor at her Fairmont Street address. That notice included a heading indicating that it was sent by certified mail and regular mail, and included a Certified Article Number. The Heather James Affidavit did not specifically state that the notice was mailed by certified mail, but if the debtor pursues the claim that the notice was not mailed by certified mail, a new affidavit could be filed to address that point.

event, the court's order disposed of the motion to void the foreclosure sale as though it were a preliminary injunction.  Had the debtor pled such a claim in a supplemental complaint, it would have been before the court for plenary determination in accordance with orderly procedures (including the opportunity for an answer or motion to be filed in response to the supplemental complaint, and pretrial procedures such as discovery).  It was never properly pled as part of a complaint, and cannot be viewed as having been disposed of in a plenary fashion, having preclusive effect, by reason of the court's denial of the motion to void the foreclosure sale.  Accordingly, I view the issue of proper mailing of the notice of foreclosure as still an open issue.

    Nevertheless, if the debtor wanted to seek in this adversary proceeding to void the foreclosure sale for lack of proper notice, she ought to have obtained leave to file a supplemental complaint to seek such a ruling.  The supplemental motion for summary judgment appropriately addressed the only claims raised by the debtor's complaint and amended complaint, namely, the issues arising from the insurance dispute.  In order to dispose of this adversary proceeding in an orderly fashion, the court is entitled to limit the claims adjudicated to those that have been pled in the plaintiff's complaint and amended complaint.  Windward and Mooring are entitled to a final adjudication of the

only claims pled. The supplemental motion for summary judgment will be granted.

IV

CONCLUSION

The court concludes that the handling of the insurance claim by Windward and Mooring did not constitute a breach of contract, and that summary judgment is appropriate.[8] That having been the only claim pled in the complaint and the amended complaint, it is

ORDERED that summary judgment is granted in favor of Windward and Mooring. It is further

ORDERED that this ruling is without prejudice to the debtor's claims regarding notice of the foreclosure sale. It is further

ORDERED that the court expressly determines that there is no just reason for delay, and directs the entry of final judgment as to Windward and Mooring regarding the claims asserted against them.

[Signed and dated above.]

Copies to: Debtor; all counsel of record; Chapter 13 Trustee.

---

[8] Windward and Mooring requested attorney's fees, and the promissory note executed pursuant to the loan may entitle them to recover such fees. Nevertheless, at this juncture (with the collateral securing the loan obligation having been sold at forecloure) they may deem the pursuit of such fees as likely to be unproductive. I will give them a 21-day opportunity to file a motion for such fees, but if no such motion is filed, the claim for attorney's fees can be pursued outside of this adversary proceeding.